## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No. 20-cv-02193 CMA-MEH

**Swift Distribution, LLC d/b/a ULTIMATE SUPPORT SYSTEMS**, a Delaware limited liability company,
    Plaintiff,

v.

**RELIANCE INTERNATIONAL CORP.**, a Taiwanese corporation
    Defendant.
_____

### DEFENDANT'S MOTION TO DISMISS COMPLAINT AND/OR TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)
_____

Defendant Reliance International Corp. ("Defendant" or "Reliance"), by and through their undersigned counsel, hereby moves the Court to dismiss the Complaint of Swift Distribution, LLC d/b/a Ultimate Support Systems ("Ultimate") pursuant to Fed. R. Civ. P. 12(b)(2) and (5) of the Federal Rules of Civil Procedure, or, in the alternative, to transfer this action to the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1404(a).

Defendant submits the following brief in support of its Motion together with Affidavits of Jerry Chen and Robert Rispoli, incorporated and referenced herein as "JC Aff." and "RR Aff.". [1]

---

[1] Materials outside the pleadings should be considered and are necessary to set forth facts that are not contained in the pleadings at this early stage of litigation. Courts regularly rely on outside materials when considering motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and (5) without converting the motion to a motion for summary judgment. *See Matthys v. Narconon Fresh Start*, 104 F.Supp.3d 1191 (D. Colo. 2015); *see also Federal Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170 (10th Cir. 1992).

## CERTIFICATE OF CONFERENCE

On October 1, 2020, undersigned counsel conferred with Plaintiff's counsel via the telephone. The deficiencies that require dismissal of the Complaint against the Defendant are not correctable by amendment. Plaintiff opposes the relief sought in this motion.

## NATURE OF THE ALLEGATIONS AND CLAIMS

Reliance is a corporation formed under the laws of Taiwan with a place of business in Taipei, Taiwan.  Ultimate is a Delaware limited liability company with a place of business in Fort Collins, Colorado.  Reliance asserts that it is not subject to general or specific personal jurisdiction in Colorado and that this action should be dismissed or alternatively transferred to the District of Delaware where a related proceeding is pending.

Reliance manufactures modular device stands for audio and visual equipment and supplies products to customers throughout the world, including the United States. Ultimate sells modular device stands for audio and visual equipment.  In 2019, Ultimate owed a significant outstanding balance to Reliance.  In March 2019, the parties agreed to a plan (the "2019 Plan") to address Ultimate's outstanding balance.  RR Aff., ¶ 10. Ultimate failed to adhere to the 2019 Plan and the parties continued negotiations to resolve the outstanding balance.  On July 2, 2020, Reliance delivered to Ultimate a Demand Letter and a copy of its draft Delaware Complaint.  Over the following weeks, the parties continued negotiations both between counsel and between the principals directly. RR Aff., ¶¶ 7-22.  While Ultimate was drafting the complaint in the present action in secret, Ultimate continued sham negotiations with Reliance in order to delay its filing of the Delaware complaint.  These sham negotiations continued through the very day

2

Ultimate filed the present action. This type of anticipatory filing should not be given precedence over the later filed Delaware action.

## ARGUMENT

### I. This Court Lacks Personal Jurisdiction over Reliance.

#### A. Legal Standard

To establish personal jurisdiction in a diversity action, the plaintiff must show that jurisdiction is proper under both the Colorado long-arm statute and the Due Process Clause of the Fourteenth Amendment. *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1253 (D. Colo. 2000), *aff'd,* 16 Fed. Appx. 959 (10th Cir. 2001). "Due process requires both that the defendant purposefully established minimum contacts within the forum State and that the assertion of personal jurisdiction would comport with fair play and substantial justice." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). "A court may assert general jurisdiction over foreign corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Old Republic Insurance Company*, 877 F.3d at 904. A court may assert specific jurisdiction over an out-of-state party only if the cause of action relates to the party's contacts with the forum state. *Id.* "Whether a non-resident defendant has the requisite minimum contacts with the forum state to establish in personam jurisdiction must be decided on the particular facts of each case." *Beverly Kuenzle, Wayne Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996). "The plaintiff bears the burden of establishing personal jurisdiction over the defendant." *Id.*

3

In assessing contacts with a forum, courts have considered such factors as: (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation. *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996).

### B. Ultimate Cannot Establish General Personal Jurisdiction Over Reliance.

Jerry Chen, a principal of Reliance met Mike Belitz, a principal from Ultimate, in 2008, and occasionally thereafter, at music merchant trade shows held annually in California and Tennessee where business among music merchants is generally conducted. JC Aff., ¶¶ 7-10.  Since about 2010, Ultimate ordered goods from Reliance by delivering a purchase order to Reliance.  Reliance delivered the goods to Ultimate F.O.B. Shanghai together with a packing list and an invoice.  The parties transacted business in this manner through 2019.  JC Aff., ¶¶ 20-22; RR Aff., ¶¶ 28-33.

Ultimate cannot show that general personal jurisdiction exists.  Reliance does not solicit business within Colorado through a local office, agents or salespersons.  It maintains no offices and has no employees within Colorado.  It has no bank accounts within Colorado.  It does not hold itself out as doing business within Colorado, whether through advertisements, business listings or otherwise.  It does not attend any trade show within Colorado.  Reliance has not entered into any contracts within Colorado.  Reliance

4

has never directly marketed goods to be sold in Colorado or distributed products throughout Colorado. The amount of business that Reliance has conducted with Ultimate since 2009 represents on average approximately 1.5% of the business it conducted in the entire United States. JC Aff., ¶¶ 11-19. These limited sales to Ultimate are not an activity which support the exercise of in personam jurisdiction by the Court. See *Hydraulics Unlimited Mfg. Co. v. B/J Mfg. Co.*, 323 F. Supp. 996, 1001 (D. Colo. 1971), *aff'd,* 449 F.2d 775 (10th Cir. 1971). Reliance has no affiliations with Colorado that are so continuous and systematic as to render them essentially at home in Colorado. *See Old Republic Insurance Company*, 877 F.3d at 904. Thus, Reliance is not subject to the Court's general personal jurisdiction. *See Trierweiler*, 90 F.3d at 1533.

**C.    Ultimate Cannot Establish Specific Personal Jurisdiction Over Reliance.**

Ultimate's allegations and the indisputable facts show that personal jurisdiction over Reliance is not authorized by Colorado's long-arm statute, which in part, allows for jurisdiction over a cause of action arising from the transaction of business within Colorado. *See* C.R.S. § 13-1-124(1)(a). Specific jurisdiction may be exercised where the defendant has "purposefully directed" its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum. *Beverly Kuenzle, Wayne Kuenzle*, 102 F.3d at 456. "Purposeful availment requires actions by the Defendant which create a substantial connection with the forum state." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1092 (10th Cir. 1998) (citations omitted).

5

Ultimate alleges this court has personal jurisdiction over Reliance because, "at all times material to the allegations in this Complaint, Reliance marketed, sold, and distributed products throughout the State of Colorado, and Ultimate's causes of action arise out of Reliance's in-state business activities." Complaint, Doc. 1, para. 5. These allegations are false. As discussed above, Reliance did not market, sell, or distribute any products throughout the State of Colorado. As described *supra*, the parties established a business relationship at music trade shows in 2008 and 2009, which trade shows were not held in Colorado. None of these orders were the result of activities by Reliance targeted at the State of Colorado.

Notably, every shipment was "Free on Board" or "F.O.B." with a shipping location outside of the United States. An F.O.B. term in a contract means that the seller must assume transportation costs only to the point specified, with the buyer being responsible for transportation costs thereafter. *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1374 n.3 (Fed. Cir. 2005); *In re Prod. Steel, Inc.*, 54 B.R. 417, 421 (Bankr. M.D. Tenn. 1985). A seller's responsibility ends at the F.O.B. shipment location, with the buyer receiving legal title to the goods upon delivery to that location and risk of loss passing from seller to buyer. *Id.* For the period of 2009 to 2019, there were 130 shipments of goods from Reliance to Ultimate, all of which were F.O.B. Shanghai such that Ultimate took legal title to the goods outside of the United States. RR Aff., ¶ 29.

Additionally, Reliance is not subject to specific personal jurisdiction in Colorado simply because it entered into a contract with Ultimate. The law is clear that a party does not submit itself to personal jurisdiction in a distant forum simply by entering into a contract

with a party that resides in that forum. See *Ruggieri v. Gen. Well Serv., Inc.*, 535 F. Supp. 525, 535 (D. Colo. 1982); see also *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1230 (10th Cir. 2020); *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007). The same holds true even in cases where the defendant enters the forum state to discuss some details of the contract. See *Associated Inns & Rest. Co. of Am. v. Dev. Associates*, 516 F. Supp. 1023, 1026 (D. Colo. 1981).

The facts of this case are analogous to those presented in *Automated Quill, Inc. v. Chernow*, 455 F. Supp. 428 (D. Colo. 1978). The parties in that case entered into a license agreement regarding use of certain computer programs. *Id.* at 429. The plaintiff, a Colorado corporation, brought suit in this Court alleging breach of the agreement. *Id.* The defendants, a Florida corporation and three citizens of the state of Florida, moved to dismiss for lack of personal jurisdiction on grounds that the agreement had been executed in Florida, none of the defendants transacted business in Colorado, and none had entered Colorado during negotiation of the agreement. In granting the defendants' motion, Judge Kane noted "[t]he mere existence of a contract executed by a Colorado resident is insufficient to confer personal jurisdiction over an absent non-resident defendant;" and "[t]his is exactly what plaintiff would have us base in personam jurisdiction on in this case." *Id.* at 432. The Court found:

> Defendants did not come into Colorado for either negotiations or execution of the licensing agreement in question; they did not initiate any activity peculiar to Colorado which was undertaken on defendants behalf; the licensing agreement in question was not issued in conjunction with any other Colorado activity; the defendants activities as licensees are not specifically directed to Colorado; there is no evidence that defendants maintain an agent within the State of Colorado, a place of business, employees, a bank account, any subsidiaries which do business within the state, exercise ownership over any real or personal property within the

> state, nor enter into any contract in the state or any contract to be performed within the state. It is only too evident that defendants have not personally availed themselves of the privilege of conducting activities in Colorado.

*Id.* at 432.

Judge Kane's analysis applies with equal force to the facts of this case. Reliance did not come into Colorado for the purpose of negotiating any contracts with Ultimate. There was no particular activity to be performed by Reliance within Colorado under the purchase orders. Reliance has no agents within Colorado, no place of business, employees, bank accounts or subsidiaries doing business within Colorado. Reliance owns no real property or personal property within Colorado. Accordingly, the Purchase Orders and any electronic communications sent in response to Ultimate by Reliance should not constitute sufficient minimum contacts with Colorado that would allow the Court to exercise personal jurisdiction over Reliance. Accordingly, Ultimate has failed to show that the Court should exercise specific personal jurisdiction over Reliance.

## II.     This Action Should Be Dismissed For Insufficient Service Of Process.

Reliance moves this Court to quash the return of service of process on Reliance and dismiss this action for insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5). Ultimate misled the Court by claiming that Reliance was actively evading service when it obtained an order for substituted service on Reliance's United States counsel. When a defendant challenges service of process, the plaintiff bears the burden of establishing the validity of service pursuant to Fed. R. Civ. P. 4. *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006). Fed. R. Civ. P. 4(h) provides that if the defendant corporation is not located within the United States, service of process is conducted

8

according to Federal Fed. R. Civ. P. 4(f), which describes the manner for serving an individual in a foreign country.

Reliance acknowledges the Court's holding in *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) that the court may, in its discretion, allow a plaintiff to attempt service pursuant to a Court order before attempting more conventional service. *Id.* at 1015. Notwithstanding *Rio Props*, many courts, including in this district, have concluded that prior to allowing substituted service under Fed. R. Civ. P. 4(f)(3) " 'the court may require that plaintiff show that he made reasonable efforts to serve the defendant and that the court's intervention will avoid further unduly burdensome or futile efforts at service.' " *Blumedia Inc. v. Sordid Ones BV*, 10-CV-01158-MSK-KLM, 2011 WL 42296, at *4 (D. Colo. Jan. 6, 2011) (quoting *Malone v. Highway Star Logistics, Inc.*, 08-CV-01534-RPM-KLM, 2009 WL 2139857, at *2 (D. Colo. July 13, 2009) (additional internal quotations omitted)). Ultimate's service of process is insufficient because it made no attempt to serve Reliance prior to seeking an order for substituted service and obtained such an order by providing the Court with incomplete and misleading information. Plaintiff's counsel published materials on how to effectuate service in Taiwan. RR Aff. ¶¶ 41-42. Ultimate's counsel did not even try to follow their own guidance, but rather contacted Attorney Rispoli asking him to accept service of process. Attorney Rispoli advised that he was not authorized to accept service. RR Aff. ¶ 35; JC Aff. ¶ 34.

Ultimate thereafter attempted to serve Mike Sails, who they alleged was a Vice President of Reliance, located in San Antonio, Texas. See Motion for Substituted Service, Doc. 12, p. 2. Ultimate claimed that Mr. Sails both refused to accept service and

9

knowingly avoided service, somewhat conflicting concepts. *Id.* These were material allegations upon which Ultimate sought an order for substituted service upon counsel for Reliance. Ultimate misled this Court by suggesting that Mike Sails was a Vice President of Reliance. Ultimate knew, however, that Mike Sails was not a Vice President of Reliance, as their own documents reflected that he was "VP of Reliance USA." Affidavit of Non-Service, Doc. No. 12-4, p. 1. Reliance USA is not a defendant in this action and it is not a corporate affiliate of Reliance. JC Aff. ¶ 39. Mike Sails has never been an employee, agent, director or officer of Reliance, has never been a Vice President of Reliance, and counsel for Ultimate was repeatedly notified that he was not authorized to accept service on behalf of Reliance. JC Aff. ¶ 36-37; RR Aff. ¶¶ 36-40, 43 and 44. Mike Sails is a principal of Antigua Winds Inc., a Texas corporation having an address of 5806 La Colonia, San Antonio, TX 78218, the address identified by Ultimate in its Affidavit of Non-Service as the address of Reliance USA. RR Aff. ¶ 37.

*Clancy Sys. Int'l, Inc. v. Image Sensing Sys., Inc.*, 16-CV-01848-CMA-KMT, 2016 WL 9344080 (D. Colo. Oct. 14, 2016), and *Blumedia Inc. v. Sordid Ones BV*, 10-CV-01158-MSK-KLM, 2011 WL 42296, at *4 (D. Colo. Jan. 6, 2011), are instructive. In both cases, the Court required the Plaintiff to first attempt service before granting leave for substitute service under Fed. R. Civ. P. 4(f)(3). No such attempt was made here. JC Aff. ¶¶ 32-33; RR Aff. ¶ 46. Ultimate failed to request an order from this Court requesting that the Taiwanese Court serve process (as outlined in counsel's article). It attempted to serve Reliance USA and used that attempt to mislead this Court into believing that Reliance was actively avoiding service of process. While this Court had discretion to authorize a

10

substitute method of service, it should quash service of process in this matter and require Ultimate to make a diligent attempt to serve Reliance before allowing substituted service.

### III. Alternatively, This Action Should Be Transferred To The District Court Of Delaware.

If the Court concludes that it has personal jurisdiction over Reliance (it does not) and that service was proper (it was not), this Action should be transferred to the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1404(a).

**A.   Legal Standard**

Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought, "for the convenience of parties and witnesses, in the interests of justice."  Underlying this venue transfer statute are the laudable goals of preventing "the waste 'of time, energy, and money' and 'protect[ing] litigants, witnesses, and the public against unnecessary inconvenience and expense.' " *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964). The district court retains discretion to resolve motions to transfer based upon an individualized, case-by-case consideration of convenience and fairness. *Wada v. U.S. Secret Serv.*, 525 F. Supp. 2d 1, 9 (D.D.C. 2007); *Ervin & Associates, Inc. v. Cisneros*, 939 F. Supp. 793, 799 (D. Colo. 1996).  The moving party has the burden of showing that the action could have been brought in the alternative forum, the existing forum is inconvenient, and the interests of justice are better served in the alternate forum. *Wolf v. Gerhard Interiors, Ltd.*, 399 F. Supp. 2d 1164, 1166 (D. Colo. 2005).

11

### B. This Action could and should have been filed in Delaware

Delaware should have primary jurisdiction over this dispute, notwithstanding that the Colorado action was filed first. This action is an improper anticipatory filing that should not be given precedence over the related proceeding pending in the District of Delaware.

The first-to-file rule provides that "the first federal district court which obtains jurisdiction of parties and issues should have priority and the second court should decline consideration of the action until the proceedings before the first court are terminated." *W. LB AG, New York Branch v. DT Land Dev., LLC*, 09-CV-01931-REB-BNB, 2010 WL 2698297, at *2 (D. Colo. June 25, 2010). "Despite this general principal, a district court may decline to follow the first-to-file rule and dismiss an action if that action was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction." *West LB AG, New York Branch*, 2010 WL 2698297, at *2; see also *MedSpring Grp., Inc. v. Atl. Healthcare Grp., Inc.*, 1:05 CV 115, 2006 WL 581018, at *4 (D. Utah Mar. 7, 2006); *Heatron, Inc. v. Shackelford*, 898 F. Supp. 1491, 1494–1495 (D. Kan. 1995). If this action is not dismissed, it should be transferred to the District of Delaware.

The anticipatory-filing exception to the first-to-file rule necessitates the transfer of the present action. Reliance specifically threatened an imminent suit in Delaware and, on July 2, 2020, provided to counsel for Ultimate a copy of the draft Delaware complaint. RR Aff. ¶ 7. In its July 10, 2020 response, Ultimate recognized that its open invoices with Reliance totaled $243,533.39. RR Aff. ¶ 12. During the course of the next two weeks, Ultimate induced Reliance to delay filing the Delaware lawsuit by engaging in sham negotiations while it surreptitiously prepared the complaint in this action.

On Wednesday, July 22, 2020, counsel for Ultimate proposed its counter settlement offer and referred to direct talks between its principal Mike Belitz and Reliance's principal Jerry Chen, writing that "In talking directly with Jerry, Mike wanted to gain some additional understanding on the outstanding issues in hopes of getting this thing settled." RR Aff. ¶ 15. Mike Belitz forwarded that same email correspondence to Jerry Chen asking Mr. Chen to "Please send the offer that you are referencing and/or a counter to my proposal." RR Aff. ¶ 18; JC Aff. ¶ 30. Reliance's counsel responded to Ultimate's counsel, copies to Mr. Chen and Mr. Belitz (i.e., "reply all") stating in part:

> Reliance stands ready to commence litigation. It will do so some time after tomorrow.
>
> In consideration for delaying such litigation, Reliance asks that Ultimate execute a Promissory Note for payment to Reliance of $243,533.39. Thereafter, the parties can consider and attempt to settle all remaining claims including Ultimate's requests for credits for damages, its approximately $60K of remaining unpaid invoices and its abandoned inventory.

RR Aff. ¶ 15. On the very same day Ultimate filed this action, counsel for Ultimate replied to counsel for Reliance stating that "Your client's position is understood. I will be discussing further with Mr. Belitz this afternoon." RR Aff. ¶ 20. Later that same day, counsel for Ultimate asked the following of Reliance's counsel:

> What are the terms of the proposed promissory note? You've conveyed that your client requires the Note because of the built in protections in the event of a default, so if he has those protections, would he consider installments that start off smaller and potentially escalate over time as the economy, pandemic, etc. stabilize? Would he consider waiving interest?

RR Aff. ¶ 22.

Ultimate's bad faith and anticipatory filing are evident. Under direct threat of a filing in Delaware, Ultimate continued sham settlement discussions to induce Reliance to delay

13

filing of the Delaware lawsuit.  Ultimate, while having engaged one Colorado law firm to represent it in its negotiations with Reliance, contemporaneously engaged its current counsel Wilson Elser Moskowitz Edelman & Dicker LLP, and directed them to prepare and file the complaint in Colorado.  While this was happening, first counsel for Ultimate continued to engage in discussions with Reliance's counsel about the requested promissory note, and Mike Belitz made direct communications with Jerry Chen about Reliance's settlement proposal.

An improper anticipatory filing in a contract dispute occurs when a breaching party, who expects to be sued, files an action in a forum convenient to it in order to pre-empt an anticipated breach of contract action in another venue."  *Swift Distribution, LLC v. Starin Mktg., Inc.*, No. 16-CV-00893-MSK-STV, 2016 WL 9344072, at *2 (D. Colo. Nov. 4, 2016).  Ultimate filed its Complaint on the last day of an extended deadline after which Reliance was to file its Complaint in Delaware.  "This is a classic case of an anticipatory lawsuit."  *Morgan v. 3-B Cattle Company, Inc.*, No. 18-CV-371-GKF-FHM, 2018 WL 6651529, at *3 (N.D.Okla. Dec. 19, 2018) ("The timing and defensive nature of this lawsuit belie any suggestion by [Plaintiff] to the contrary.  Counsel for [Defendant] sent counsel for [Plaintiff] a demand letter that enclosed a draft [Defendant's Complaint] and specified a deadline to respond. One day before the deadline, [Plaintiff] filed this action.").

Reliance has been prejudiced by Ultimate's misleading conduct because it relied on communications by Ultimate and its counsel as evidence of good faith settlement discussions, and delayed filing suit in Delaware.  The Tenth Circuit recently opined that courts must also determine whether any equitable considerations, including inequitable

14

conduct, bad faith, anticipatory suits, and forum shopping, merit not applying the first-to-file rule in a particular case. *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1124–1125 (10th Cir. 2018). All are present here and merit not applying the first-to-file rule in the Colorado suit.

### C. The Existing Forum Is Inconvenient

As discussed above, Reliance asserts that it lacks sufficient minimum contacts for this Court to assert personal jurisdiction over it. For the same reasons, the Colorado District Court is an inconvenient forum, with no connection to the dispute other than the presence of Ultimate within Colorado's borders. As Ultimate is a Delaware corporation, it would be disingenuous for it to assert that Delaware was an inconvenient forum for the litigation of this dispute.

### D. The Interests of Justice Are Better Served in the Delaware Proceeding

As discussed above, the interests of justice favor giving the Delaware proceeding priority over this action. Ultimate's overt and gamesmanship-oriented "race to the courthouse" should not be indulged, and this action should be dismissed in favor of the Delaware proceeding.

## IV. Conclusion

The Court should dismiss the Complaint in its entirely with prejudice. Alternatively, this Court should transfer this action to the District of Delaware pursuant to 28 U.S.C. § 1404 (a).

DATED: October 1, 2020

                                          Respectfully submitted,

THE MATTHEW C. FERGUSON LAW FIRM, P.C.
      */s/ Ryan J. Dougherty*
Matthew C. Ferguson, #25687
Ryan J. Dougherty, # 46214
119 South Spring, Suite 201
Aspen, Colorado 81611
Telephone: (970) 925-6288
E-mail: matt@matthewfergusonlaw.com
E-mail: ryan@matthewfergusonlaw.com
*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on this 1st day of October 2020, a true and accurate copy of the foregoing Defendant's **Motion to Dismiss the Complaint and/or Transfer Pursuant To 28 U.S.C. § 1404(a)** was filed and served via CM/ECF filing system upon following:

**Laura J. Ellenberger, Esq.**
Wilson Elser Moskowitz Edelman & Dicker LLP-Denver
1225 17th Street
Suite 2750
Denver, CO 80202
303-572-5300
303-572-5301 (fax)
laura.ellenberger@wilsonelser.com

**Robert B. Hinckley, Jr., Esq.**
Wilson Elser Moskowitz Edelman & Dicker LLP-Denver
1225 17th Street
Suite 2750
Denver, CO 80202
303-572-5300
303-572-5301 (fax)
robert.hinckley@wilsonelser.com

I hereby certify that I have mailed or served the foregoing document or paper to the following non-CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

**John Farnsworth, Esq.**
**Robert Rispoli, Esq.**
Withers Bergman LLP
157 Church Street, 12th Floor
New Haven, CT 06510-2100

*/s/ Ryan J. Dougherty*
Ryan J. Dougherty