**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 20-cv-02193-CMA-MEH

SWIFT DISTRIBUTION, LLC, *d/b/a* Ultimate Support Systems,

     Plaintiff,

v.

RELIANCE INTERNATIONAL CORP.,

     Defendant.

---

**ORDER ADOPTING THE NOVEMBER 23, 2020 RECOMMENDATION OF UNITED
STATES MAGISTRATE JUDGE MICHAEL E. HEGARTY**

---

This matter is before the Court on the November 23, 2020 Recommendation of United States Magistrate Judge ("the Recommendation") (Doc. # 39), wherein Magistrate Judge Michael E. Hegarty recommends that this Court deny Defendants' Motion to Dismiss and/or Transfer ("the Motion") (Doc. # 27). Defendant Reliance International Corp. ("Reliance") timely objected to the Recommendation. (Doc. # 40.) For the reasons described herein, Defendant Reliance's objection is overruled. The Court affirms and adopts the Recommendation.

## I.   <u>BACKGROUND</u>

### A.   FACTUAL BACKGROUND

This action arises out of a contract dispute between the parties.[1] Plaintiff Swift Distribution LLC, *d/b/a* Ultimate Support Systems ("Ultimate") is a Delaware corporation with its principal place of business in Colorado. (Doc. # 1 at ¶ 1.) Plaintiff designs, markets, and sells audio and visual equipment for the music industry. (*Id.* at ¶ 8.) Defendant Reliance is a Taiwanese manufacturing company that manufactures modular device stands for audio and visual equipment. (*Id.* at ¶ 9.)

Starting around 2010, and continuing through 2019, Plaintiff periodically ordered equipment to be manufactured by Defendant. (*Id.* at ¶ 11.) These orders totaled hundreds of thousands of dollars. (*Id.* at ¶ 31.) Defendant fulfilled these purchase orders and shipped the goods to the United States, including to Colorado. (Doc. # 32-3 at ¶ 15.) Defendant's representatives also visited Plaintiff's place of business in Colorado on five occasions from late 2009 or early 2010 to August 2019. (*Id.* at ¶ 17.) Plaintiff alleges that the purpose of these meetings was to discuss various business dealings between the parties including solicitation of business, current contracts, and quality control issues. (*Id.*)

---

[1] In evaluating personal jurisdiction, courts accept as true all well-pleaded, "plausible, non-conclusory, and non-speculative" factual allegations in a complaint. *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). The *prima facie* showing of personal jurisdiction may be made by submitting affidavits or other written materials with facts that would support jurisdiction over the defendant. *OMI Holdings, Inc. v. Royal Ins. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Accordingly, the Court draws the following facts from the Complaint (Doc. # 1) and the affidavits submitted in support of the briefing on the Motion to Dismiss (Doc. ## 28, 29, 32-1, 32-2, 32-3, 34, 41-1, 41-2).

Plaintiff alleges that some of the goods manufactured by Defendant did not meet the agreed-upon specifications or were otherwise defective. (Doc. # 1 at ¶ 14.) Defendant alleges that Plaintiff failed to pay outstanding balances on invoices. (*Id.* at ¶ 28.) For several years, the parties attempted negotiations to resolve these disputes. Ultimately, with both parties contemplating litigation, Plaintiff filed the instant action.

## B.   PROCEDURAL HISTORY

On July 24, 2020, Plaintiff initiated the instant action against Defendant, asserting claims for breach of contract and promissory estoppel. (Doc. # 1.) On August 5, 2020, Defendant filed suit against Plaintiff in the United States District Court for the District of Delaware in an action named *Reliance International Corp. v. Swift Distribution, LLC d/b/a Ultimate Support Systems,* Civil Action No. 20-cv-01045-MN ("Delaware Action"). On October 1, 2020, Defendant filed the instant Motion seeking to dismiss the complaint for lack of personal jurisdiction and insufficient service of process, or, in the alternative, to transfer the action to the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1404(a). (Doc. # 27.) On February 10, 2021 (after Judge Hegarty issued and the parties briefed the instant Recommendation), the Delaware Action was transferred to this District. *See Reliance International Corp. v. Swift Distribution LLC*, Civil Action No. 21-cv-00409-RBJ (Doc. # 23 (order transferring case to the District of Colorado)).

## C.   THE MAGISTRATE JUDGE'S RECOMMENDATION

In his November 23, 2020 Recommendation, Magistrate Judge Hegarty recommended that the Court deny Defendant's Motion in whole. (Doc. # 39.) On

December 7, 2020, Defendant filed an Objection to the Recommendation. (Doc. # 40.)
Plaintiff filed a Response in Opposition to Defendant's Objections. (Doc. # 41.) For the
following reasons, the Court adopts the Recommendation.

## II.  STANDARDS OF REVIEW

### A.  REVIEW OF A RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter,
Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been
properly objected to." An objection is properly made if it is both timely and specific.
*United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d
1057, 1059 (10th Cir. 1996). In conducting its review, "[t]he district judge may accept,
reject, or modify the recommended disposition; receive further evidence; or return the
matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In the absence of a timely objection, however, "the district court may review a
magistrate [judge's] report under any standard it deems appropriate." *Summers v. Utah*,
927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)
(stating that "[i]t does not appear that Congress intended to require district court review
of a magistrate's factual or legal conclusions, under a de novo or any other standard,
when neither party objects to those findings.")).

### B.  FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2)

Under Federal Rule of Civil Procedure 12(b)(2), the defendant may move to
dismiss a complaint if the court lacks personal jurisdiction over the defendant. The

4

plaintiff bears the burden of establishing personal jurisdiction over the defendant,

though in the preliminary stages of litigation this burden is "light." *Wenz v. Memery*

*Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Absent an evidentiary hearing, the plaintiff

must make a *prima facie* showing of personal jurisdiction, met "by demonstrating, via

affidavit or other written materials, facts that if true would support jurisdiction over the

defendant." *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007) (quoting *TH*

*Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1286 (10th Cir.

2007)). The court accepts as true all well-pleaded facts (those that are not speculative

or conclusory) alleged by the plaintiff. *Dudnikov*, 514 F.3d at 1070. "If the parties

present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor,

and the plaintiff's prima facie showing is sufficient notwithstanding the contrary

presentation by the moving party." *Wenz,* 55 F.3d at 1505 (internal quotation marks and

citations omitted).

## III.   ANALYSIS

The Court's analysis will proceed in two steps. First, the Court will review the

portions of the Recommendation to which neither party objected to determine whether

there are any clear errors in Judge Hegarty's findings and conclusions. Second, the

Court will conduct a *de novo* review of the portion of the Recommendation to which

Defendant objected.

## A.   CLEAR ERROR REVIEW

Neither party objected to the following determinations by Judge Hegarty:

 1.  that Defendant's Motion to Dismiss on the grounds of service of process

should be denied (Doc. # 39 at 9);

2. that, subject to the analysis of whether Defendant purposefully directed activities at the forum state, Plaintiff's alleged injury arises out of forum-related activities (Doc. # 39 at 8); and

3. that no other considerations would render jurisdiction unreasonable so as to offend notions of fair play and substantial justice. (*Id.*)

The Court has reviewed the pleadings concerning the above claims as well as the Recommendation. The Court concludes that Judge Hegarty's analyses and recommendations are correct, and that "there is no clear error on the face of the record." Fed. R. Civ. P. 72 advisory committee's note. Therefore, the Court adopts the applicable portions of the Recommendation. *See Summers*, 927 F.2d at 1167 (explaining that in the absence of a timely objection, "the district court may review a magistrate [judge's] report under any standard it deems appropriate.").

Additionally, neither party objected to Judge Hegarty's determination that Defendant's request to transfer should be denied without prejudice pending a decision on Ultimate's motion to dismiss in the Delaware Action because the second-filed court should make the initial determination of whether the two actions substantially overlap. *See* (Doc. # 39 at 3) (citing *Crocs, Inc. v. Cheng's Enterprises, Inc.*, No. 06-cv-00605-PAB-KMT, 2015 WL 5547389, at *3 (D. Colo. Sept. 21, 2015)). The Delaware Action has since been transferred to this District. *See Reliance International Corp. v. Swift Distribution LLC*, Civil Action No. 21-cv-00409-RBJ. Accordingly, the Court denies the portion of the Motion to Dismiss that requests a transfer of this case to the District of

Delaware as moot.

**B.    *DE NOVO* REVIEW**

The issue in this case is whether Defendant purposefully directed its activities at the forum state such that specific jurisdiction exists. Having adopted Judge Hegarty's conclusions that Plaintiff's alleged injury arises out of Defendant's forum-related activities and that exercising jurisdiction over Defendant would not offend notions of fair play and substantial justice, the Court limits its analysis herein to whether Defendant purposefully directed its activities at residents of the forum state.

1.    Applicable Law

Personal jurisdiction requires that a plaintiff demonstrate that jurisdiction is legitimate under the forum state's long-arm statute and that it comports with constitutional due process demands. *Dudnikov*, 514 F.3d at 1070. Because Colorado's long-arm statute extends jurisdiction to the maximum extent permissible under the Due Process Clause, the statutory and constitutional requirements collapse into a single due process inquiry. *Id.* The due process inquiry has two requirements: (1) that the defendant "purposefully established minimum contacts with the forum State" and (2) that the "assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

The minimum contacts standard may be met either through a showing of general jurisdiction or through specific jurisdiction. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090–91 (10th Cir. 1998). To assert specific jurisdiction, a

court must find that the defendant (1) purposefully directed its activities at residents of the forum, and (2) the litigation must result from alleged injuries that "arise out of or relate to" those activities. *Burger King*, 471 U.S. at 472. The "purposefully directed" prong is also called the "purposefully availed" prong in the contract context, but in either case its aim is to "ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Dudnikov*, 514 F.3d at 1071. Thus, a court must examine the "quantity *and* quality of *Defendants'* contacts" rather than look to the unilateral acts of someone other than the defendant to satisfy the purposefully directed standard. *OMI Holdings*, 149 F.3d at 1092 (emphasis in original). Ultimately, "the question of whether a non-resident defendant has the requisite minimum contacts with the forum state to establish in personam jurisdiction must be decided on the particular facts of each case." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004).

    2.  <u>Analysis</u>

In this case, the Court finds that Defendant purposefully directed its activities at the forum state. "[P]arties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State." *Burger King*, 471 U.S. at 473 (internal quotations omitted). As described in more detail below, Defendant's decade-long relationship with Plaintiff, in which Defendant manufactured and shipped thousands of goods pursuant to more than a hundred purchase orders collectively worth at least hundreds of thousands of dollars, demonstrates that Defendant purposefully directed activities at Colorado.

Although not reaching the intimacy present in *Burger King* (a structured 20-year franchise relationship), several aspects of the parties' dealings show a "continuing relationship" of the character sufficient to find personal jurisdiction. *See id.* at 480–81. According to the list of disputed outstanding invoices prepared by Plaintiff, the parties contracted tens of times over more than half a decade for purchases totaling more than $300,000. (Doc. # 29 at 30–34.) That list does not include the many completed orders between the parties that occurred over nearly a decade. (Doc. # 1 at ¶ 11.) Defendant acknowledges that at least some of the products were shipped directly to Colorado. (Doc. # 33 at 3.) Plaintiff alleges that Defendant directed thousands of products into Colorado over ten years. (Doc. # 41 at 7.) Although the parties may disagree about exactly how many products were shipped to Colorado and the extent to which Defendant understood those occurrences, at this stage of the litigation factual disputes are resolved in Plaintiff's favor. *Benton*, 375 F.3d at 1074–75. The parties engaged in prior negotiations over the scope and future of their business relationship, (Doc. # 34 at 28), and communicated about how to resolve problems that arose during that relationship (Doc. # 32-3 at ¶ 17). Plaintiff provided specifications, and paid for custom tooling at Defendant's manufacturing facilities, so that Defendant could manufacture products as ordered by Plaintiff. (Doc. # 1 at ¶ 12.) Finally, Defendant traveled to Plaintiff's place of business in Colorado to discuss business dealings and the subject of this dispute on several occasions over the years. (Doc. # 32-3 at ¶ 17.) Together, these contacts cannot be characterized as "random, fortuitous, or attenuated." *See Dudnikov*, 514 F.3d at 1071. Instead, they suggest that Defendant "continuously and deliberately

exploit[ed]" a market, such that it "must reasonably anticipate being haled into court there." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984).

Additionally, the parties engaged in sustained, direct communications over the course of a decade, which suggests a continuous business relationship. "Although phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts, such materials provide additional evidence that [the defendant] pursued a continuing business relationship with a [forum state] corporation." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 912 (10th Cir. 2017) (quoting *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1277–78 (10th Cir. 2005)). Nearly all correspondence sent by Plaintiff originated in Colorado. (Doc. # 32-3 at ¶ 12.) Negotiations by Plaintiff took place in Colorado. (*Id.* at ¶ 13.) Some payments for invoices were sent from Colorado. (*Id.* at ¶ 14.) The parties exchanged many emails relating to the manufacturing disputes that ultimately became the subject of this litigation, including emails to coordinate a trip by Defendant's representatives to visit Plaintiff's place of business in Colorado in November 2017. (Doc. # 41-1 at ¶ 2.) Defendant's representatives in fact did travel to Colorado to Plaintiff's place of business, and also on several other occasions to discuss various dealings related to the parties' business relationship. (Doc. # 32-3 at ¶ 17.)

Thus, "the business end of the transactions - the brokering of the deals, the coordination of the parties, the exchange of money and information between the parties . . . would take place . . . partially in Colorado, where [Plaintiff] has [its] principal place of business." *Benton*, 375 F.3d at 1077. Such communications and actions "repeatedly

confirmed that decisionmaking authority was vested in the [Colorado] headquarters"
such that it was reasonable that Defendant might be called to account in Colorado for
injuries arising out of the parties' business dealings. *See Burger King*, 471 U.S. at 480–
81. Collectively, these activities support the Court's exercise of personal jurisdiction
over Defendant.

Defendant argues that it was Plaintiff who initiated purchase orders and
communications and, therefore, Defendant cannot be said to **itself** have purposefully
directed activities at Colorado because it was merely responding to Plaintiff. (Doc. # 40
at 4–6.) This argument is unavailing. Although a court cannot use unilateral activity by
another party to find personal jurisdiction over a defendant, *see Dudnikov*, 514 F.3d at
1074, the actions alleged in the dispute before this Court cannot be properly
characterized as unilateral.

Unilateral action occurs where "[t]he defendant's **only** contact . . . is the result of
the act of someone else and not the defendant's own intentional conduct." *Id.* (emphasis
added). Although Plaintiff may have initiated orders, Defendant's decisions to
repeatedly accept the orders, manufacture the products, ship the products, and travel to
Colorado to discuss the products are all properly characterized as intentional conduct.
To allow defendants to sidestep personal jurisdiction because they carefully framed
their actions as responses to other actors would undermine the fair play that lies at the
foundation of personal jurisdiction.

Unilateral action also occurs "where the defendant has purposefully directed its
activities at the forum, but the plaintiff's injury nonetheless 'arises out of' the plaintiff's or

a third party's unilateral acts, rather than the defendant's." *Id.* Plaintiff alleges that its injuries result from Defendant's failure to manufacture products according to agreed-upon specifications. Therefore, the actions in dispute are not unilateral actions in this sense.

Finally, Defendant argues that its foreign status must be given significant weight in assessing the reasonableness of exerting jurisdiction over Defendant. (Doc. # 40 at 1–2.) In so arguing, Defendant relies on *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 114 (1987). Although the Supreme Court in *Asahi* held that the lower court erred in finding that the exercise of personal jurisdiction over the foreign defendant was consistent with Due Process Clause, the business dealings between the parties in *Asahi* were far less directed at the forum state than Defendant's actions in this case. In *Asahi*, neither party to the case was a resident of the forum state, the transactions between the parties occurred entirely in a foreign jurisdiction, and the products were shipped from one foreign jurisdiction—Japan—to another foreign jurisdiction—Taiwan. *Id.* The Supreme Court thus held that "[c]onsidering the international context, the heavy burden on the alien defendant, and the slight interests of the plaintiff and the forum State [in the exercise of jurisdiction over the foreign defendant], the exercise of personal jurisdiction by a California court over Asahi in this instance would be unreasonable and unfair." *Id.* at 116.

By contrast, in the instant case, Plaintiff is a resident of Colorado, the transactions between the parties took place partially in Colorado, Defendant visited Plaintiff in Colorado to conduct business, and Defendant shipped its products into the

United States and Colorado. Therefore, both Plaintiff and the State of Colorado have compelling interests in this Court's exercise of jurisdiction over Defendant. The Court finds that Defendant's contacts with Colorado justify the exercise of personal jurisdiction notwithstanding its foreign status. As the Supreme Court recognized, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Id.* at 114.

For the reasons provided above, the Court finds that Plaintiff made a *prima facie* showing that Defendant purposefully directed activities at Colorado such that there are adequate minimum contacts with the state of Colorado for the exercise of personal jurisdiction to be proper in this case.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court ORDERS as follows:

- Defendant Reliance's Objection to the Recommendation (Doc. # 40) is OVERRULED;

- The Recommendation of United States Magistrate Judge (Doc. # 39) is AFFIRMED AND ADOPTED as an Order of this Court; and

- Defendant's Motion to Dismiss (Doc. # 27) is DENIED.

DATED:  February 22, 2021

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge